346 F.Supp. 697 (1972)
PRISONERS' LABOR UNION AT JACKSON et al., Plaintiffs,
v.
STATE OF MICHIGAN, DEPARTMENT OF CORRECTIONS, et al., Defendants.
Civ. A. No. 38594.
United States District Court, E. D. Michigan, S. D.
August 11, 1972.
Larry R. Farmer, James B. VeuCasovic, Detroit, Mich., for plaintiffs.
William J. Mullaney, J. Ronald Kaplansky, Asst. Attys. Gen., Detroit, Mich., for defendants.

MEMORANDUM OPINION
FEIKENS, District Judge.
Plaintiff individuals are adult citizens of the United States presently incarcerated in Michigan penal institutions. Plaintiff Prisoners' Labor Union at Jackson and at Marquette are two voluntary non-profit associations with their principal places of business within this state.
Defendant Department of Corrections is the department of the State of Michigan responsible for the operation of state correctional facilities. Defendant individuals are various employees of the Department of Corrections.
Plaintiffs bring this action under 42 U.S.C. § 1981 et seq. Their prayer for a declaration of this suit as a class action need not and is not decided here.
A hearing on a show cause order directed to defendants was held July 31, 1972.
This case stems from plaintiffs' attempt to obtain recognition of their union as the bargaining unit for state prisonersby the Michigan Employment Relations Commission (MERC). See M.C.L.A. §§ 423.1 et seq. The merits of that claim are not before this court.
Plaintiffs allege infringement of a number of constitutional rights. Prominent allegations include the following: A number of prisoners active in the union organizing effort have been transferred *698 either to another prison, to segregation, to the trusty division, or to a medical facility summarily in an attempt to impede union organizing; union documents (authorizations, affidavits, and other papers) have been confiscated from inmates' cells; prisoners attempting to organize the union have been denied access to prison meeting facilities while other organizations have been allowed such use; a rule against solicitations has been promulgated by defendants in an effort to block the obtaining of inmate union authorizations; one prisoner was denied a visit by an Ann Arbor city councilwoman and a newspaper reporter interested in the organizing effort; a magazine has not been delivered to a prisoner active in the union; attorneys representing the union and its organizers have been denied visits with prisoners; communications between these attorneys and their clients relating to the organizing of the union have been interfered with; and one prisoner has been denied parole because of his organizing activities.
Plaintiffs argue that these acts constitute violations of the First, Sixth, Eighth and Fourteenth Amendments of the Constitution.
It is well settled that a "prisoner retains all the rights of an ordinary citizen except those expressly, or by necessary implication, taken from him by law." Coffin v. Reichard, 143 F.2d 443 (6th Cir. 1944). See also, United States v. Manfredonia, 341 F.Supp. 790 (S.D. N.Y.1972). The courts have recognized the prisoners' constitutional rights in a number of circumstances. See, e. g., Preston v. Thieszen, 341 F.Supp. 785 (W.D.Wis.1972) (Mail); Krause v. Schmidt, 341 F.Supp. 1001 (W.D.Wis. 1972) (Due Process); Almond v. Kent, 459 F.2d 200 (4th Cir. 1972) (Cruel & Unusual Punishment); Sczerbaty v. Oswald, 341 F.Supp. 571 (S.D.N.Y.1972) (Discrimination on Basis of Beliefs); and Fortune Society v. McGinnis, 319 F.Supp. 901 (S.D.N.Y.1970) (Reading Materials). Decisions in this circuit (Jones v. Metzger, 456 F.2d 854, 6th Cir. 1972) and in this district (Sinclair v. Johnson, No. 35809, October 5, 1971) are in accord.
Prisoners no less than other persons have a constitutional right of access to the courts. Corby v. Conboy, 457 F.2d 251 (2nd Cir. 1972). See also Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); Harris v. Pate, 440 F.2d 315 (7th Cir. 1971); Gilmore v. Lynch, 319 F.Supp. 105 (N.D. Cal.1970), aff'd. per curiam sub nom. Younger v. Gilmore, 404 U.S. 15, 92 S. Ct. 250, 30 L.Ed.2d 142. In this case the rights asserted must be shown to be federally protected and if such is shown and the plaintiffs' allegations are proven, plaintiffs will have stated a case for federal relief. There are here, however, countervailing policy considerations which militate against the immediate exercise of this court's jurisdiction over such alleged violations.
Involved herein, indeed the underlying issue, is an attempt by a number of inmates and others to form an inmate-labor union in the Michigan prison system. The relief requested here is important to that effort. From the defendants' point of view the orderly administration of state prisons is at stake. For the federal courts to interfere in matters vital to an ongoing state function would produce ". . . friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication." Lake Carriers' Association v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972), citing Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). Under some circumstances an unresolved matter of state law will not lead the federal courts to decline jurisdiction. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). In other circumstances, the federal courts will, for a time, stay their hand to give the state courts an opportunity to resolve a state question which will decide, *699 remove or substantially alter the federal constitutional questions. Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L. Ed.2d 68 (1970). In this case the state law question is not unambiguous as applied to the present facts and an authoritative state interpretation could substantially affect the asserted federal constitutional question.
This court is mindful that "[t]he mere fact that a constitutional decision conceivably could be avoided or that federal-state friction might arise does not automatically justify resort to the doctrine [of abstention]." Garvin v. Rosenau, 455 F.2d 233 (6th Cir. 1972). But considering carefully the circumstances of this case, this court is of the opinion that it should decline to exercise its jurisdiction at the present time. The importance of the merits of the underlying case to the State of Michigan, the fact that state court remedies are arguably available to protect plaintiffs' constitutional rights, and the fact that the alleged violations of these rights are peripheral to the basic issue of this case, convince this court that it should postpone the exercise of its jurisdiction in deference to state consideration of the underlying issues.
This court does not mean to deal cavalierly with plaintiffs' choice of a federal forum; it recognizes that the state courts also have the solemn responsibility to guard, enforce and protect every right granted or secured by the Constitution of the United States. See Robb v. Connolly, 111 U.S. 624, 5 S.Ct. 544, 28 L.Ed. 542 cited in Garvin v. Rosenau, supra. In the interests of comity in our dual-judicial system and the avoidance of needless federal-state friction, this court is of the opinion that the claimed violations of plaintiffs' constitutional rights should first be presented to state courts for protection. It is only under these narrowly limited circumstances that this court invokes the abstention doctrine. Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L. Ed.2d 444 (1967); Lake Carriers' Association v. MacMullan, supra. A more-or-less comprehensive state process for the resolution of the ultimate, as well as ancillary, constitutional questions might well be interfered with if this court were to presently exercise its jurisdiction. See Holmes v. New York City Housing Authority, 398 F.2d 262, 266-267 (2nd Cir. 1968); Alabama Public Service Commission et al. v. Southern Railway Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).
Nor does this court hold that plaintiffs are being required to "exhaust state remedies" prior to obtaining federal relief. Accordingly, this court abstains. Jurisdiction is retained, however.
An appropriate order may be submitted.